UNITED STATES, Appellee

v.

Private E1 Joshua M. FAGAN, United States Army, Appellant.

ARMY 20000891.

U.S. Army Court of Criminal Appeals.

26 Feb. 2003.

For Appellant: Colonel Adele H. Odegard, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Mary M. McCord, JA; Captain Mary C. Vergona, JA (on brief).

For Appellee: Lieutenant Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Jennifer H. McGee, JA; Captain Christopher G. Graveline, JA (on brief).

Before CHAPMAN, Senior Judge, CARTER, and STOCKEL Appellate Military Judges.

OPINION OF THE COURT

CARTER, Judge:

A military judge sitting as a general court-marital convicted appellant, pursuant to his pleas, of wrongful use of marijuana, wrongful distribution of marijuana (three specifications), larceny (three specifications), and forgery (three specifications), in violation of Articles 112a, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 912a, 921, and 923 [hereinafter UCMJ]. Appellant was sentenced to a dishonorable discharge, confinement for thirty months, and forfeiture of all pay and allowances. Pursuant to a pretrial agreement, the convening authority reduced the period of confinement to twenty months, but otherwise approved the sentence as adjudged. The case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

In his first assignment of error, appellant asserts that while serving a portion of his sentence at the United States Army Confine-

ment Facility, Europe (USACFE), Mannheim, Germany, he was subjected to cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution; Article 55, UCMJ, 10 U.S.C. § 855; and this court's holding in *United States v. Kinsch*, 54 M.J. 641 (Army Ct.Crim. App.2000). We are not entirely persuaded as to the merits of appellant's allegations. However, because of the limitations placed upon our fact-finding power by *United States v. Ginn*, 47 M.J. 236, 248 (1997), and as a matter of judicial economy, we will exercise our "broad power to moot claims of prejudice" by granting appellant sentence relief rather than order a *DuBay* [1] hearing as requested by the government in its brief. *United States v. Wheelus*, 49 M.J. 283, 288 (1998).

### Facts

The following facts are not in dispute. [2] On 21 June 2000, appellant was convicted at a special court-martial of fourteen specifications involving illegal drugs and a nine-day absence without leave. For these crimes he was sentenced to forty-five days confinement, a bad-conduct discharge, forfeiture of $670 pay per month for six months, and reduction to Private E1. After serving his confinement at USACFE, appellant was released on 28 July 2000 and began the process of preparing to leave Germany on involuntary excess leave.

Before completing his outprocessing, appellant committed additional drug offenses, which along with previously committed larceny and forgery offenses, were prosecuted in this second court-martial. On 12 October 2000, appellant was tried and sentenced in this case and again confined at USACFE. Two weeks later, on 27 October 2000, this court issued its decision in *Kinsch*, finding that appellant Kinsch suffered cruel and unusual punishment at the hands of a particular USACFE guard (SGT D) who, "under the pretense of conducting a 'pat down,' maliciously and sadistically struck appellant [Kinsch] in his testicles several times with the intent of unnecessarily and wantonly causing appellant physical and mental pain." *Kinsch*, 54 M.J. at 648. On 29 January 2001, appellant was transferred to the Regional Confinement Facility at Fort Knox, Kentucky, to finish serving his approved sentence.

On 29 October 2001, appellant executed an affidavit, remarkably similar to the multiple affidavits executed over one year earlier by other USACFE inmates and submitted in *Kinsch*. In his affidavit, appellant asserted that during his second period of confinement at USACFE, the same SGT D also intentionally assaulted him in the testicles during searches, without a legitimate penal purpose. On 7 November 2001, this court admitted appellant's affidavit, along with eight other inmate affidavits that we previously considered in *Kinsch*. On 4 September 2002, we admitted affidavits from SGT D and from a former USACFE commander, both contesting the factual assertions in appellant's affidavit that he was subjected to cruel and unusual punishment.

---

**1.** *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967). *DuBay* is a two-page per curiam opinion where the parties both agreed that a serious issue had been raised as to whether the convening authority, in a series of cases, had violated the prohibition against unlawful command influence established by Article 37, UCMJ, 10 U.S.C. § 837.

**2.** Some of these facts come from our decisions and the corresponding records of trial in other cases where we previously granted relief based upon affidavits submitted by the appellants in those cases for nearly identical allegations of misconduct as that asserted by appellant Fagan, and allegedly committed by the same USACFE prison guard, Sergeant (SGT) D. *See* cases cited at *Kinsch*, 54 M.J. at 643 n. 3. In most of these cases, the government conceded that relief was appropriate, apparently in part because under *Ginn* they could not submit affidavits contesting the allegations without forcing a *DuBay* hearing. Our authority to take judicial notice of relevant portions of other pertinent records of trial is well established. *See, e.g., United States v. Durant*, 55 M.J. 258, 262 (2001); *United States v. McElroy*, 40 M.J. 368, 369 n. 1 (C.M.A.1994); *United States v. Budd*, 15 M.J. 465 (C.M.A.1983) (interlocutory order), *rev'd in part on other grounds*, 17 M.J. 431 (C.M.A.1984) (summary disposition); *United States v. Clossen*, 14 M.J. 126 (C.M.A. 1982) (interlocutory order); *United States v. Austin*, 20 C.M.R. 939, 941, 1955 WL 3667 (A.F.B.R. 1955). While such cases most often involve sentence appropriateness or disparity issues, the unusual posture of appellant's case merits similar treatment.

As a remedy for his alleged cruel and unusual punishment, appellant asks that we "grant appropriate relief by determining a monetary value for any confinement credit" we determine appropriate. The government asks that we consider the affidavits they submitted and conclude under the fourth *Ginn* principle that the record as a whole compellingly demonstrates the improbability of appellant's assertions. Alternatively, if the court concludes that we cannot decide the legal issue based on the submitted affidavits, the government asks that we order a *DuBay* hearing.

### United States v. Ginn [3]

Appellant's case is another in an increasing number of cases in which the government is placed at a significant disadvantage when an appellant files a post-trial affidavit alleging for the first time on appeal an issue that was not raised or fully developed at the court-martial.

Prior to the 1997 *Ginn* decision, when an appellant filed an affidavit raising an issue on appeal that either was not raised or fully developed at trial, the government was free to submit affidavits or other credible evidence for admission by this court to supplement the record and challenge appellant's assertions. This court then reviewed the

record of trial and the post-trial evidence submitted by the parties and exercised our Article 66(c), UCMJ, fact-finding authority to resolve the controverted questions of fact. If we had insufficient evidence to resolve the matter, we could ourselves order a *DuBay* hearing to gather additional facts. The pre-*Ginn* procedure permitted the judges of this court to use our collective years of experience in exercising our broad Congressionally-granted, fact-finding authority to review and decide all post-trial issues in a manner that was fair to both parties and that promoted good order, discipline, and justice, while ensuring the effective and efficient use of limited judicial and court-reporting resources.[4]

This system, which was both fair and judicially efficient, worked well for decades under the UCMJ until the 1997 *Ginn* decision, which provides:

> In sum, a post-trial evidentiary hearing was not required in this case and is not required in any case simply because an affidavit is submitted by an appellant. In most instances in which an appellant files an affidavit in the Court of Criminal Appeals making a claim such as ineffective assistance of counsel at trial [or any other matter that was not raised or fully litigated at trial],[5] the authority of the Court to

3. Judges Sullivan, Cox, and Effron concurred in the majority opinion in *Ginn*. Judge Gierke wrote a separate opinion concurring in part and in the result. Judge Crawford wrote a separate opinion concurring in the result. *Ginn*, 47 M.J. at 248–49, 251.

4. *Ginn* held that it was legal error for "a Court of Criminal Appeals to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Ginn*, 47 M.J. at 243. Yet prior to *Ginn*, the Courts of Criminal Appeals did precisely that very thing with the implicit, if not explicit, approval of our superior court. *See, e.g., United States v. Saale*, ACM S29144, 1997 WL 37758 at *1, 1997 CCA LEXIS 34 at *2–3 (A.F. Ct.Crim.App. Jan 16, 1997) (unpub.) (considering conflicting post-trial affidavits from appellant and his defense counsel, court rejected appellant's *Grostefon* assertion of ineffective assistance of counsel), *pet. denied*, 48 M.J. 11 (1997); *United States v. Hamilton*, 41 M.J. 32, 37 (C.M.A.1994) (holding that Army Court of Military Review was not required to order a *DuBay* hearing but instead properly considered conflicting post-trial affidavits, court rejected appellant's allegation of unlawful command influence); *United States v.*

*Roxas*, 41 M.J. 727, 731–32 (N.M.Ct.Crim.App. 1994) (considering conflicting post-trial affidavits from appellant and his defense counsel, court rejected appellant's *Grostefon* assertion of ineffective assistance of counsel), *pet. denied*, 43 M.J. 174 (1995). In *United States v. Henry*, 42 M.J. 231, 238 (1995), our superior court unanimously remanded a Navy and Marine Corps case so that the Court of Criminal Appeals could use its fact-finding power under Article 66(c), UCMJ, to resolve appellant's assertion that he was denied conflict free counsel. The court suggested "comparing appropriate [post-trial] affidavits" or ordering a *DuBay* hearing if the issue could not be "appropriately resolved by affidavits." *Id.* In his dissent in *United States v. Walters*, 45 M.J. 165, 167 (1996), Judge Sullivan expressly objected to the majority opinion, which permitted the Army court to resolve the post-trial dispute by making a credibility determination between conflicting affidavits.

5. Although *Ginn* involved an ineffective assistance of counsel allegation, it is apparently the intent of our superior court that it be applied to any case in which an appellant submits a post-trial affidavit alleging some legal deficiency relat-

decide that legal issue without further proceedings should be clear. The following principles apply:

First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals **is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding.** During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

*Ginn,* 47 M.J. at 248 (emphasis added). In practice, our superior court's decision in

ed to his trial. *See, e.g., United States v. Lynn,* 54 M.J. 202, 204–05 (2000) (implying that *Ginn* was

*Ginn* has not worked well or even-handedly before this court.

The problem presented by the *Ginn* principles is compounded by the requirement imposed on this court under *United States v. Grostefon,* 12 M.J. 431, 436 (C.M.A.1982). *Grostefon* requires us to consider, and acknowledge in our decision, each issue personally asserted by an appellant in a post-trial submission to this court. *Id. Grostefon* was intended to provide an opportunity for an appellant to raise "any issue" to our court he wished to have considered with respect to his approved findings and sentence; it was not intended to "signal [the] abolition of basic rules of appellate practice and procedure." *United States v. Healy,* 26 M.J. 394, 397 (C.M.A.1988). However, application of the *Ginn* principles to resolve *Grostefon* issues raised by affidavit has significantly altered the basic rules of appellate practice and procedure before this court, as described above.

 Under the current *Grostefon/Ginn* framework, as we understand it, if an appellant raises a *Grostefon* issue but does not do so in an affidavit, the government may submit, and we may admit and consider, appropriate and relevant government appellate exhibits, including affidavits, to rebut allegations raised in the *Grostefon* submission. We may then use our Article 66(c), UCMJ, fact-finding authority to resolve each *Grostefon* matter, for or against an appellant, without resort to a *DuBay* hearing. However, if an appellant submits his *Grostefon* matters in an affidavit, then we are precluded from exercising our Congressionally-granted, factfinding authority and we must instead resolve each issue under the *Ginn* principles. In some cases, the required *DuBay* hearing may actually prejudice an appellant who has served his confinement and reestablished himself in the civilian community by forcing him to leave his new civilian job, perhaps for an extended period of time, to participate in the *DuBay* hearing. In short, the rigid application of the *Ginn* principles strains the efficiency and effectiveness of the military appellate process and challenges the integri-

not applicable because the " 'facts' of th[e] appeal are essentially stipulated or unrebutted").

ty of the system by permitting an appellant to constrain this court's fact-finding authority merely by placing his *Grostefon* or other assertions in an affidavit.

Under *Ginn*, the government is seriously and unfairly handicapped if it believes that an issue raised by an appellant in an affidavit, including a *Grostefon* assertion made in an affidavit, does not warrant relief. The government is restricted to arguing to this court: (1) even if true, appellant's assertions do not warrant relief (first *Ginn* principle); (2) appellant's claim is speculative and should be rejected (second *Ginn* principle); or (3) the record as a whole compellingly demonstrates the improbability of appellant's asserted facts (fourth *Ginn* principle). However, the government may not submit affidavits containing conflicting rebuttal evidence that tends to prove one of these three points or contradict appellant's sworn assertion of facts unless the government is willing to hold an expensive and time consuming *DuBay* hearing to litigate the issue. Simply put, the government must either withhold relevant affidavit evidence that might disprove an appellant's factual assertions and hope that the court rules against the appellant, or submit the affidavits which may cause us to order a *DuBay* hearing.

■ Turning to appellant's case, we recognize that a literal reading of the sixth *Ginn* principle dictates that we cannot grant appellant relief in this case and must remand the case for a *DuBay* hearing because we admitted the government's affidavits that expressly contradict and challenge the factual assertions in appellant's affidavit. *See Ginn*, 47 M.J. at 248. In appellant's case, the costs and other resources required for a *DuBay* hearing could be very significant. Potential witnesses could include personnel still stationed in Mannheim, Germany, where the incidents allegedly occurred, as well as other appellants, some of whom are still in prison, who raised the same allegations against the same guard. In short, it would be an expensive and time consuming use of judicial resources for a matter collateral to the approved findings and sentence.

Accordingly, we find that the clear mandate in *Ginn* (decided 30 September 1997), which would require a *DuBay* under these facts, is in conflict with the subsequent declaration of our broad power to moot claims of prejudice under *Wheelus* (decided 30 September 1998). *See Ginn*, 47 M.J. at 248; *Wheelus*, 49 M.J. at 288. Applying these two cases to the facts of appellant's case, we believe that we have no legal authority to use our Article 66(c), UCMJ, fact-finding authority to decide the merits of appellant's contention against him. Rather than order a *DuBay* hearing under *Ginn*, we will moot the issue by granting sentence relief under *Wheelus* as a matter of judicial economy. *See Wheelus*, 49 M.J. at 284. However, the proper interplay among the judicially created remedies in the *Grostefon*, Ginn, and *Wheelus* [6] decisions is far from clear and the resulting tension is having a considerable and costly adverse impact on the government's ability to contest, and this court's ability to decide in an efficient and effective manner, an appellant's factual assertions submitted in a post-trial affidavit.

When a service Court of Criminal Appeals believes that "the underlying logic of [a U.S. Court of Appeals for the Armed Forces] decision ha[s] changed, ... its recourse [is] to express that viewpoint and to urge [ ] reconsideration of [that] precedent." *United States v. Allbery*, 44 M.J. 226, 228 (1996) (citing UCMJ art. 67(a)(2), 10 U.S.C. § 867— "Court of Appeals for the Armed Forces shall review 'all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals of the Armed Forces for review[.]' "). Accordingly, we take the unusual step of recommending that The Judge Advocate General order this case be sent to the United States Court of Appeals for the Armed Forces for review under Article 67(a)(2), UCMJ, on the following issues:

---

6. The decisions in *Grostefon, Ginn,* and *Wheelus* all interpret this court's responsibility and authority under Article 66(c), UCMJ. *See Grostefon*, 12 M.J. at 435; *Ginn*, 47 M.J. at 243; *Wheelus*,

49 M.J. at 288. There is no clear authority as to which of these cases controls in the event of conflicts among them.

I. Whether the U.S. Army Court of Criminal Appeals erred in concluding that the six *Ginn* principles provide the proper decisional framework for analyzing any issue raised in a post-trial affidavit, including *Grostefon* issues;

II. Whether the U.S. Army Court of Criminal Appeals erred in concluding that *Ginn* precluded that court from considering the government affidavits that factually conflicted with appellant's post-trial affidavits and in resolving the issue in the government's favor without ordering a *DuBay* hearing; and

III. Whether the U.S. Army Court of Criminal Appeals erred in concluding that it had the authority to grant appropriate relief under *Wheelus* when the court admitted government affidavits specifically rebutting appellant's post-trial affidavits that made factual assertions of cruel and unusual punishment.

### Decision

We have considered appellant's remaining assignments of error and the *Grostefon* matters he personally asserted and find them to be without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for nineteen months, and forfeiture of all pay and allowances. All rights, privileges, and property, including pay and allowances forfeited pursuant to Article 58b, Uniform Code of Military Justice, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are hereby ordered restored. *See* Uniform Code of Military Justice, Article 75(a).

Senior Judge CHAPMAN and Judge STOCKEL concur.